NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MARCEL KATZ,

        Plaintiff,

        v.

AMBIT NORTHEAST, LLC,

        Defendant.

Case No. 3:20-cv-01289 (BRM) (DEA)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant Ambit Northeast, LLC ("Ambit") seeking to dismiss Plaintiff Marcel Katz's ("Katz") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) Katz opposed the Motion. (ECF No. 15.) Ambit filed a Reply in support of its Motion. (ECF No. 16.) Katz filed a Sur-Reply in opposition to the Motion. (ECF No. 17.) Ambit responded to Katz's Sur-Reply. (ECF No. 20.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Ambit's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [Amended Complaint] and draw all inferences from the facts alleged in the light most favorable to" Katz. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington*

*Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The factual background of this dispute is explained in this Court's Opinion dated September 16, 2020 (the "September Opinion") (ECF No. 10),[1] which the Court incorporates by reference. The relevant procedural history is summarized as follows.

In an Order (ECF No. 11) accompanying the September Opinion, the Court dismissed without prejudice Katz's original Complaint (ECF No. 1-1). On October 6, 2020, Katz filed an Amended Complaint *pro se*, reasserting claims for unlawful enrichment (Counts I–IV),[2] consumer fraud under the New Jersey Consumer Fraud Act ("NJCFA") (Count V), common law fraud (Count VI), and invasion of privacy (Count VII). (ECF No. 12.) On November 3, 2020, Ambit filed a Motion to Dismiss, seeking to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) On November 17, 2020, Katz opposed the Motion. (ECF No. 15.) On November 30, 2020, Ambit filed a Reply in support of its Motion. (ECF No. 16.) On February 8, 2021, Katz filed a Sur-Reply in opposition to the Motion. (ECF No. 17.) On February 19, 2021, Ambit responded to Katz's Sur-Reply. (ECF No. 20.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

---

[1] *Katz v. Ambit Ne., LLC*, Civ. A. No. 20-1289, 2020 U.S. Dist. LEXIS 169407 (D.N.J. Sept. 16, 2020).

[2] As pointed out in the September Opinion, because "unlawful enrichment" is not a valid cause of action under New Jersey law, the Court will analyze Katz's Counts I–IV under the "unjust enrichment" jurisprudence. (ECF No. 10 at 5 n.2.) Katz does not oppose such a treatment adopted by the Court in the September Opinion.

However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v.*

*McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

### B.      Federal Rule of Civil Procedure 9(b)

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Under Rule 9(b), a plaintiff must describe the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which they are charged.'" *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 647 (D.N.J. 2003) (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "The plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject some measure of substantiation into a fraud allegation." *Id.* (citing *Seville*, 742 F.2d at 791).

## III.   DECISION

### A.      The Court Declines to Dismiss Katz's Claims for Being Time-Barred

Ambit argues Katz's claims are time-barred and should be dismissed with prejudice, because his claims are based on the alleged conducts of Ambit that occurred in, or beginning in, 2013, *i.e.*, more than six years before he first brought this action on December 10, 2019. (ECF No.

14-1 at 14–15.) Ambit claims the New Jersey Natural Gas Company's ("NJNG") bill dated in July 2013, as attached to the Amended Complaint, disclosed "Ambit Energy" was supplying Katz natural gas and a "Supplier Adjustment" was applied to his bill, which resulted in Katz being charged a higher amount than the "Comparative NJNG Gas Charge." (*Id*. at 15.) Ambit states, because the Amended Complaint lacks any explanation regarding when or how Katz obtained the NJNG bills, these bills should be assumed to be sent by NJNG to Katz in the ordinary course of service. (ECF No. 20 at 5.) Ambit also claims it had collectively sent to Katz's home address in July 2012 the Welcome Letter, the Energy Facts Label ("EFL"), and the Sales Agreement and Terms of Service ("TOS") associated with Katz's Ambit account, which all showed Ambit as Katz's gas supplier and the related billing information. (*Id*. at 6; ECF No. 14-1 at 9–10.) Ambit maintains Katz therefore knew, or through reasonable diligence should have known, all of the information needed to assert his claims more than seven years before he filed this action. (ECF No. 20 at 6.) Ambit posits the NJNG bills attached to the Amended Complaint contradicts Katz's allegation that he was unaware of Ambit acting as the supplier, and the Court should disregard such an allegation. (*Id*.) Katz denies having received any correspondence from or signed any contract with Ambit. (ECF No. 15 at 2.) Katz alleges he first received the NJNG bills attached to the Amended Complaint, when he sought an explanation for his bill charges from NJNG, which then showed him the bills and stated Ambit asserted itself as his supplier to charge him the money. (*Id*. at 2–3.) Katz attaches to his opposition brief another set of NJNG bills, which he claims to have actually received during NJNG's ordinary course of service. (ECF No. 17 at 2.) The bills attached to the opposition brief do not mention Ambit. (ECF No. 15 Ex. A at 7–9.)

Ambit contends the NJNG bills attached to Katz's opposition brief and Katz's explanation of how he obtained these bills should have been, but were not, incorporated in the Amended

Complaint, and are therefore new factual allegations not entitled to the Court's consideration.[3] (ECF No. 16 at 6–7.) Katz counters the above allegations are not new facts raised in his opposition brief, because the Amended Complaint already stated Ambit, without Katz's knowledge and consent, added him to Ambit's client roster and caused him to be charged at higher rate. (ECF No. 17 at 2.) The Court, at this stage, declines to conclude Katz's claims are time-barred.

"The statute of limitations is an affirmative defense not normally decided on a motion to dismiss." *Kelly v. Pier*, Civ. A. No. 16-3417, 2017 U.S. Dist. LEXIS 125001, at *31 (D.N.J. Aug. 8, 2017) (citing *Crump v. Passaic Cry.*, 147 F. Supp. 3d 249, 259 (D.N.J. 2015)). "However, 'where the complaint facially shows noncompliance with the limitations period,' the statute of limitations can be determined on a motion to dismiss." *Id.* (quoting *Crump*, 147 F. Supp. 3d at 259); *see also LeBlanc v. Snavely*, 453 F. App'x 140, 141 (3d Cir. 2011) (citations omitted) ("If the allegations, taken as true, show that relief is barred by the applicable statute of limitations, a complaint is subject to dismissal for failure to state a claim."). "[I]n order to alleviate the harsh results that might otherwise flow from a rigid or mechanical application of the statute of limitations, the New Jersey Supreme Court has devised an equitable principle known as the 'discovery rule.'" *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 479 (D.N.J. 2002). "The discovery rule postpones a claim from accruing until the 'injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim.'" *Kelly*, 2017 U.S. Dist. LEXIS 125001, at *32 (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). "Normally, courts permit the parties to take discovery

---

[3] The Court need not decide whether the new allegations and exhibits in Katz's opposition brief warrant consideration at this stage. As illustrated below, even if entitled to the Court's consideration, these allegations and exhibits do not affect the Court's analysis on the statute of limitations issue and the merits of Katz's claims.

on the issue of when plaintiffs reasonably discovered, or could have reasonably discovered, that they had a viable cause of action." *Id*. at *33 (citing *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354, 1368 (D.N.J. 1996)).

"In New Jersey, the statute of limitations for . . . unjust enrichment[] and New Jersey Consumer Fraud Act claims is six years." *Angelo v. Fid. & Guar. Life Ins. Co.*, Civ. A. No. 18-3224, 2019 U.S. Dist. LEXIS 12251, at *5 (D.N.J. Jan. 25, 2019) (citing N.J. Stat. Ann. § 2A:14-1). "The statute of limitations applicable to common law fraud actions under New Jersey law is six years." *Tammera v. Grossman*, Civ. A. No. 10-569, 2010 U.S. Dist. LEXIS 32641, at *14 (D.N.J. Mar. 29, 2010) (citations omitted). "[C]laims for invasion of privacy based on intrusion on seclusion are subject to the two-year statute of limitations imposed by N.J.S.A. 2A:14-2." *Smith v. Datla*, 164 A.3d 1110, 1117 (N.J. Super. Ct. App. Div. 2017) (citing *Rumbauskas v. Cantor*, 649 A.2d 853, 858 (N.J. 1994)). Because Katz first brought this action on December 10, 2019, if Katz discovered, or with reasonable diligence should have discovered, that he might have a basis for his unjust enrichment and fraud claims before December 10, 2013, or his invasion of privacy claim before December 10, 2017, then these claims would be barred by the applicable statutes of limitations.

Here, the Amended Complaint does not facially shows noncompliance with the limitations period. Katz alleges Ambit added his account to Ambit's roster of clients without his knowledge as early as in 2013, without indicating when Katz realized Ambit was his gas supplier. (ECF No. 12 at 2.) Though the NJNG bills attached to the Amend Complaint may demonstrate Ambit was Katz's supplier and the related billing information, nothing in the Amended Complaint shows the time point that Katz became, or should have become, aware of these bills. Because the Amended Complaint lacks any explanation regarding when or how Katz obtained these bills, the Court

cannot simply assume NJNG sent these bills to Katz in the ordinary course of service. At the pleading stage, all reasonable inferences must be drawn in Katz's favor. Therefore, the Court declines to dismiss Katz's claims for being time-barred.

### B. Katz's Claims Are Not Adequately Pleaded in the Amended Complaint

#### 1. Katz Has Not Asserted a Viable Unjust Enrichment Claim

Ambit maintains Katz cannot state a claim for unjust enrichment, because: (1) a valid, enforceable contract existed between the parties for nearly four years (ECF No. 14-1 at 18); and (2) the Amended Complaint does nothing more than list the elements of an unjust enrichment claim (ECF No. 16 at 10). Ambit contends it was not unjustly enriched, because Katz merely paid the charges he was obligated to pay under the TOS governing his account, which Katz had actual notice of. (ECF No. 14-1 at 9 n.4, 18.) Ambit argues Katz's allegation that he became a customer of Ambit and was charged a higher amount without his knowledge or consent is not entitled to a presumption of truth, because it is contradicted by: (1) the Sainz-Martinez Declaration, which sets forth in detail the manner in which Katz became a customer of Ambit; (2) the NJNG bills attached to the Amended Complaint, which disclosed "Ambit Energy" was supplying Katz natural gas and a "Supplier Adjustment" applied to his bills in 2013, 2014, 2015, and 2016; and (3) the TOS that laid out the billing arrangement for Katz. (*Id*. at 19.) Ambit insists the Sainz-Martinez Declaration and its exhibits are integral to the Amended Complaint and warrant the Court's consideration. (*Id*. at 9 n.4.) Katz counters the Sainz-Martinez Declaration and its exhibits should be disregarded, because they not the bases, and therefore not an integral part, of the Amended Complaint. (ECF No. 15 at 2.) Katz denies having actual notice of any relationship with Ambit. (*Id*.) Katz also denies having signed any contract with or received any document from Ambit. (*Id*. at 3.) Katz explains the NJNG bills attached to the Amendment Complaint are not what he actually received during

the ordinary course of NJNG's service, but were provided by NJNG after Katz asked NJNG why his bills were so high. (*Id.* at 5.) The Court finds Katz has not stated a viable unjust enrichment claim.

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. A. No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *76–77 (D.N.J. July 21, 2011) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). "[T]he equitable remedy of unjust enrichment is not available when there is a valid contract" between the parties. *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, Civ. A. No. 06-4449, 2009 U.S. Dist. LEXIS 26786, at *28 (D.N.J. Mar. 31, 2009) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). "Furthermore, unjust enrichment 'requires that [the] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *77 (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)). Also, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, Civ. A. No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *28 (D.N.J. Mar. 26, 2012) (citations omitted); *see also Bedi v. BMW of N. Am., LLC*, Civ. A. No. 15-1898, 2016 U.S. Dist. LEXIS 9365, at *14 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

At this stage, the Court declines to decide whether a valid contract exists between the parties. The Sainz-Martinez Declaration and its exhibits, even if integral to the Amended

Complaint and entitled to the Court's consideration, cannot establish an express contract enforceable against Katz, because they do not present a contract with Katz's signature. Nor can they establish an implied contract, "[t]he existence of" which "is an issue of fact, ordinarily left to the jury." *Lee v. S. Jersey Healthcare*, Civ. A. No. 1509-13T2, 2015 N.J. Super. Unpub. LEXIS 507, at *8 (N.J. Super. Ct. App. Div. Mar. 13, 2015) (citing *Giudice v. Drew Chem. Corp.*, 509 A.2d 200, 202 (N.J. Super. Ct. App. Div. 1986)). Because Katz denies having any contract with Ambit, whether his unjust enrichment claims are barred by a valid contract with Ambit is inappropriate for resolution at the pleading stage.

Instead, Katz has sufficiently alleged the benefit that Ambit received, *i.e.*, the increased payment for natural gas charged from his account, as reflected in the NJNG bills attached to the Amended Complaint. Katz has also stated the reason why this alleged benefit was unjustified, *i.e.*, it was charged at a rate without his consent.

Nevertheless, Katz has not sufficiently asserted an unjust enrichment claim. First, the Amended Complaint does not allege any facts indicating Katz expected remuneration from Ambit when he conferred the benefit on Ambit. On the contrary, Katz denies having noticed any relationship with Ambit during the relevant time period, which suggests Katz could not have expected remuneration from Ambit when he paid for the natural gas. Second, the Amended Complaint does not allege any direct relationship between the parties. Instead, Katz denies having any correspondence or agreement with Ambit during the relevant time period, which suggests the lack of a relationship that may give rise to Ambit's unjust enrichment. *See Union Tr. Co. of Md. v. Wakefern Food Corp.*, Civ. A. No. 86-728, 1989 U.S. Dist. LEXIS 11754, at *62 (D.N.J. Sept. 8, 1989) (citations omitted) ("[U]njust enrichment requires a relationship or course of dealings between parties which, if left undisturbed by the intervention of the law, permits one party to obtain

'unjust enrichment or unconscionable advantage' over the other."). Further, Katz alleges he paid the natural gas fees directly to NJNG, not Ambit (ECF No. 12 at 2–5), which negates a direct relationship between the parties. *See Chernus v. Logitech, Inc.*, Civ. A. No. 17-673, 2018 U.S. Dist. LEXIS 70784, at *48 (D.N.J. Apr. 27, 2018) ("[A] direct relationship is lacking here between [the parties]. [The plaintiff] does not allege that he purchased any products directly from [the defendant]."); *Bedi*, 2016 U.S. Dist. LEXIS 9365, at *15 ("No such [direct] relationship has been alleged here, and [p]laintiff does not argue to the contrary. Plaintiff purchased his vehicle from an authorized [] retailer [of the defendant], not [the defendant] itself."); *Hughes*, 2011 U.S. Dist. LEXIS 79504, at *78 (citations omitted) ("[I]f a plaintiff purchases a product from a third party retailer, rather than the defendant, then no direct relationship exists where the plaintiff purchaser conferred a benefit on the defendant."). Therefore, Katz's unfair enrichment claims (Counts I–IV) are dismissed.

### 2. Katz's Fraud Claims Are Not Adequately Pleaded

Ambit maintains Katz fails to plead his NJCFA and common law fraud claims with the required level of detail and specificity under Rule 9(b). (ECF No. 14-1 at 21.) Ambit claims the NJNG bills and Ambit's correspondences sent to Katz already disclosed: (1) Ambit was the supplier of Katz's natural gas between 2012 and 2016; and (2) Katz was charged a higher amount than the "Comparative NJNG Gas Charge" due to a "Supplier Adjustment." (*Id*.) Ambit contends, because of such disclosures, Katz cannot allege: (1) he had no consent or knowledge of Ambit as his supplier and the higher rate; (2) Ambit's conduct was fraudulent; and (3) his payment for the gas pursuant to the contract with Ambit caused him any harm. (*Id*. at 21–22.) Katz insists he has sufficiently stated the fraud claims, because the Amended Complaint has alleged: (1) Ambit's fraudulent conduct, *i.e.*, putting itself down as a third-party supplier without any permission from

Katz; (2) an ascertainable loss by Katz, *i.e.*, the increased price that Katz had to pay for the natural gas; and (3) a causal relationship between Ambit's conduct and Katz's loss. (ECF No. 15 at 4.) The Court disagrees.

### a.      Katz Has Not Asserted a Viable Common Law Fraud Claim

"To establish a claim for common law fraud, there must be '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rel[ies] on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Guers v. Jones Lang Lasalle Ams., Inc.*, Civ. A. No. 13-7734, 2014 U.S. Dist. LEXIS 135138, at *12 (D.N.J. Sept. 25, 2014) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). Here, the Amended Complaint does not allege any material misrepresentation, knowledge of falsity, or intention for reliance on Ambit's part. Nor does it allege Katz's reasonable reliance on Ambit's misrepresentation. Therefore, Katz has not stated a viable common law fraud claim.

### b.      Katz Has Not Asserted a Viable NJCFA Claim

The NJCFA prohibits a number of "unlawful practice[s]," namely:

> the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . .

N.J. Stat. Ann. § 56:8-2. "There are three general categories of unlawful practices under the NJCFA: (1) affirmative acts, (2) knowing omissions, and (3) regulation violations." *Bianchi v. Lazy Days R.V. Ctr., Inc.*, Civ. A. No. 06-1979, 2007 U.S. Dist. LEXIS 48605, at *9 (D.N.J. July 5, 2007) (citations omitted). "A claim pursuant to the NJCFA requires three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and

the loss." *Jubelt v. United Mortg. Bankers, Ltd.*, Civ. A. No. 13-7150, 2015 U.S. Dist. LEXIS 84595, at *14 (D.N.J. June 30, 2015) (citing *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 2005)). Here, Katz has adequately pleaded the second and the third elements of an NJCFA claim: Katz's alleged loss was the increased price for his gas usage, charged and therefore caused by Ambit, as revealed by the NJNG bills attached to the Amended Complaint. A significant issue with Katz's NJCFA claim is whether Katz has adequately alleged an unlawful conduct of Ambit.

In the Amended Complaint, the only accused conduct of Ambit pursuant to Katz's NJCFA claim is "reaching out and having NJNG to put" Ambit down as a third-party gas supplier without Katz's consent, thereby charging Katz at a higher rate on Ambit's behalf. (ECF No. 12 at 6.) Though Katz alleges Ambit's conduct "constitutes fraud" (*id.*), the Court does not find Katz has limited his accusation of Ambit's conduct to any specific type of unlawful conduct under the NJCFA "under the liberal interpretation applied to *pro se* complaints." *Flood v. Schaefer*, 240 F. App'x 474, 476 n.2 (D.N.J. June 4, 2007) (citing *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999)). The word "fraud" may refer to either a specific type of unlawful conduct expressly identified in the NJCFA's plain language, or "consumer fraud" in general, as that phrase appears in the title of the statute, which may cover any type of unlawful conduct under the NJCFA. Therefore, the Court must determine whether Ambit's alleged conduct could fall under any type of unlawful conduct within the meaning of the NJCFA.

Katz's allegations do not amount to an affirmative act of deception or fraud, an omission, or a regulation violation on Ambit's part. First, Ambit's alleged conduct does not involve an affirmative act of deception or fraud, because the Amended Complaint does not allege any misrepresentation by Ambit. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703 (D.N.J. 2011)

(citing *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. Super. Ct. App. Div. 2004)) ("In order for [the plaintiffs'] claims to amount to a NJCFA violation for an affirmative act of deception or fraud, plaintiffs must show that defendant's statements on its product are false."). Even if construed to refer to a misrepresentation by Ambit, Katz's allegations do not satisfy the Rule 9(b) requirements for pleading a misrepresentation under the NJCFA, because Katz fails to "allege who made the misrepresentation to whom and the general content of the misrepresentation."[4] *Donnelly v. Option One Mortg. Corp.*, Civ. A. No. 11-7019, 2014 U.S. Dist. LEXIS 41924, at *12 (D.N.J. Mar. 26, 2014) (citations omitted). Second, the Amended Complaint does not indicate an omission on Ambit's part. "To establish an act of omission under the NJCFA, 'plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'" *Harnish*, 931 F. Supp. 2d at 652 (quoting *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2001)). Katz fails to allege any of the three elements for an actionable omission. Third, the Amended Complaint does not allege any regulatory violation by Ambit as a basis for the NJCFA claim.

However, an "unlawful conduct" under the NJCFA could be an "unconscionable commercial practice." N.J. Stat. Ann. § 56:8-2. "NJCFA claims for unconscionable commercial practice need not allege an affirmative fraudulent statement, representation, or omission by the defendant." *Katz v. Live Nation, Inc.*, Civ. A. No. 09-3740, 2010 U.S. Dist. LEXIS 60123, at *13–

---

[4] Indeed, "courts have relaxed [Rule 9(b)] when factual information is peculiarly within the defendant's knowledge or control." *In re Caterpillar, Inc.*, Civ. A. No. 14-3722, 2015 U.S. Dist. LEXIS 98784, at *112 (D.N.J. July 29, 2015) (citations omitted). "Nonetheless, even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id.* (quoting *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)). The Amended Complaint does not contain such allegations to trigger a relaxed application of Rule 9(b).

14 (D.N.J. June 17, 2010) (citations omitted). "Unconscionable commercial practice claims are distinct from NJCFA claims sounding in fraud, and so the heightened pleading standard of Rule 9(b) does not apply." *Id*. at *14 (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525–27 (D.N.J. 2008)); *see also Dumont v. Litton Loan Servicing, LP*, Civ. A. No. 12-2677, 2015 U.S. Dist. LEXIS 29787, at *38 (S.D.N.Y. Mar. 11, 2015) ("[C]ourts within the District of New Jersey that have directly addressed the pleading standards applicable to [NJ]CFA violations based on the 'unconscionable commercial practices' clause have instead applied Rule 8 to those causes of action."); *Ciser v. Nestle Waters N. Am., Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015) (citing *Iqbal*, 556 U.S. at 678) (applying the *Iqbal* plausibility standard instead of Rule 9(b) in determining whether the plaintiff sufficiently pleaded its NJCFA claim for unconscionable commercial practice); *Pascarella v. Swift Transp. Co.*, 694 F. Supp. 2d 933, 941 (W.D. Tenn. 2010) (holding that "Rule 9(b)'s particularity requirement for averments of fraud [wa]s inapplicable to [p]laintiff's NJCFA claim" for unconscionable commercial practice).[5] "Because unconscionable commercial practices are categorized as 'affirmative acts,' . . . NJCFA claims alleging unconscionable commercial practice as the unlawful activity do not require a showing of 'intent to deceive' or 'knowledge of the falsity of the representation.'" *Katz*, 2010 U.S. Dist. LEXIS 60123, at *14 (citations omitted). Therefore, to allege unconscionable commercial practice on Ambit's part, Katz need not meet the heightened pleading requirements of Rule 9(b), nor does Katz have to show

---

[5] Though the Court in the September Opinion determined "[t]he heightened pleading standard set forth in Rule 9(b) applie[d] to Katz's NJCFA and common law fraud claims" (ECF No. 10 at 4), the Court declines to follow this ruling with respect to Katz's NJCFA claim for unconscionable commercial practice. Indeed, "the doctrine [of the law-of-the-case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). But "the law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Id*. at 817 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

Ambit's intent or knowledge.

Notably, the NJCFA "does not define 'unconscionable commercial practice.'" *Ciser*, 596 F. App'x at 160. "The New Jersey Supreme Court has instructed courts to 'pour content' into the term on a case-by-case basis." *Id*. (quoting *Kugler v. Romain*, 279 A.2d 640, 651 (N.J. 1971)). "The standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" *Id*. at 161 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). Here, Ambit is alleged to have caused NJNG to bill Katz at a higher price on Ambit's behalf without Katz's consent.[6] Though Katz has not explicitly alleged that Ambit's conduct constituted an unconscionable commercial practice, the Court may liberally construe the Amended Complaint to include such an allegation. *Varughese v. Robert Wood Johnson Med. Sch.*, Civ. A. No. 16-2828, 2017 U.S. Dist. LEXIS 157037, at *16 (D.N.J. Sept. 26, 2017) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)) ("*[P]ro se* complaints in particular should be construed liberally."). The Court discerns no legal authority suggesting Ambit's alleged conduct could not be "unconscionable," especially in light of a liberal interpretation of the word. *Assocs. Home Equity Servs., Inc. v. Troup*, 778 A.2d 529, 543 (N.J. Super. Ct. App. Div. 2001) (citing *Kugler*, 279 A.2d at 651) ("The word 'unconscionable' must be interpreted liberally so as to effectuate the public purpose of the [NJ]CFA."). "Generally, it is for a jury to decide whether something is an 'unconscionable commercial practice' under the NJCFA." *Ciser v. Nestlé Waters N. Am., Inc.*, No. 11-5031, 2013 U.S. Dist. LEXIS 152815, at *14 (D.N.J. Oct. 24, 2013), *aff'd*, 596 F. App'x 157 (3d Cir. 2015) (citing *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009)). Therefore, at this stage, the Court declines to decide whether the alleged conduct

---

[6] As discussed in Part III.B.1, *supra*, the Court declines to decide, at this stage, whether a valid contract exists between the parties. In other words, whether Katz consented to Ambit's bill charges is still an unresolved issue.

of Ambit was unconscionable.

Nevertheless, this does not mean Katz has adequately alleged an unconscionable commercial practice within the meaning of the NJCFA. Under the NJCFA, "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud." *Jubelt*, 2015 U.S. Dist. LEXIS 84595, at *15. "To constitute consumer fraud . . . the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *Hassler*, 644 F. Supp. 2d at 514 (quoting *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003)) (internal quotation marks omitted). "[C]ourts have dismissed NJCFA complaints for failure to state a claim 'where plaintiffs have failed to allege that the defendant engaged [in] conduct that could be considered misleading within the meaning of the [NJCFA].'" *Id.* at 515 (citations omitted). A NJCFA claim for unconscionable commercial practice is no exception to such a pleading requirement. *Ciser*, 2013 U.S. Dist. LEXIS 152815, at *14–15 (dismissing the plaintiff's NJCFA claim for unconscionable commercial practice, because the plaintiff could not "plausibly allege that [the defendant] acted in a misleading fashion"). Because the Amended Complaint does not allege Ambit's conduct was misleading within the meaning of the NJCFA, Katz has not adequately stated an NJCFA claim for unconscionable commercial practice.

Therefore, Katz's NJCFA claim fails to adequately allege any type of actionable unlawful conduct by Ambit. Katz's NJCFA claim (Count V) and common law fraud claim (Counts VI) are dismissed.

### 3.     Katz Has Not Asserted a Viable Invasion of Privacy Claim

Ambit argues Katz has not alleged any reasonable expectation of privacy in the Ambit

account that he voluntarily opened and then maintained for a period of almost four years. (ECF No. 14-1 at 24.) Ambit states Katz only focused on the expectation of privacy in his NJNG account, to which Ambit is not alleged to have access. (*Id*.) Ambit claims, even for the reasonable expectation of privacy in his NJNG account, Katz fails to provide the required factual detail to support such an expectation. (*Id*. at 26.) Ambit maintains, although individuals have a protected interest in their private banking records under New Jersey law, records concerning one's utility usage and payment records do not rise to that same level of protected information. (*Id*. at 25.) Katz maintains his invasion of privacy claim is sufficiently pleaded, because he has alleged a reasonable expectation of privacy, Ambit's highly offensive intrusion of said privacy, and the facts and elements of the privacy that was invaded. (ECF No. 15 at 4.) Katz claims to have a reasonable expectation of privacy in his NJNG account and the information within, such as his utility usage and payment records. (ECF No. 12 at 8.) Katz argues it is highly offensive to have an unrelated party to have access to these details that relate to his life style. (*Id*.) The Court disagrees.

"Invasion of privacy is not one tort, but a complex of four." *Smith v. Datla*, 164 A.3d 1110, 1118 (N.J. Super. Ct. App. Div. 2017) (citing William L. Prosser, *The Law of Torts* § 112 (3d ed. 1964)). Relevant here is "[i]ntrusion upon seclusion," which "provides a cause of action against the intentional intrusion, 'physical[] or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person.'" *Friedman v. Martinez*, 231 A.3d 719, 722 (N.J. 2020) (quoting *Restatement (Second) of Torts* § 652B (Am. Law Inst. 1977)). "[A]n intrusion is not highly offensive 'when the defendant intrudes into an area in which the victim has either a limited or no expectation of privacy.'" *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 315 (D.N.J. 2013) (quoting *Poltrock v. N.J. Auto. Accounts Mgmt. Co.*, Civ. A. No. 08-1999, 2008 U.S. Dist. LEXIS 103351, at *16 (D.N.J. Dec. 17, 2008)). "Notwithstanding a plaintiff's subjective

expectations of privacy, a court must determine whether objectively, given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy." *Id*. (quoting *Poltrock*, 2008 U.S. Dist. LEXIS 103351, at *16).

"New Jersey citizens have a reasonable expectation of privacy in their bank records." *State v. McAllister*, 875 A.2d 866, 875 (N.J. 2005). "In comparison, utility records reveal only the total amount of electricity a person is using in his home on a periodic basis and the amount being paid for those services." *State v. Domicz*, 907 A.2d 395, 403 (N.J. 2006) (reversing a lower court's decision that found a legitimate expectation of privacy in a person's electrical usage records). A person's utility records "do[] not divulge personal details—whether or when the person is watching television, talking on the telephone, or using any particular appliance." *Id*. "Thus, one could easily conclude that a person has a far greater expectation of privacy in his bank records than his utility records." *Id*. Various state courts "have rejected the notion that there is a legitimate expectation of privacy in such [utility] records." *Id*. (citations omitted).

Here, Katz's gas account, whether under the name of NJNG or Ambit, is analogous to an electricity account and only involves Katz's utility records. There is no reasonable expectation of privacy in the total amount of gas that Katz used in his home on a periodic basis and the amount paid for the gas. Moreover, the Amended Complaint does not allege any type of "information identifiable to" Katz that was invaded upon. *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 U.S. Dist. LEXIS 91286, at *67 (D.N.J. July 2, 2014) (citations and internal quotation marks omitted) ("New Jersey explicitly recognizes a right to informational privacy, which encompasses any information that is identifiable to an individual."). Katz presents no factual basis to assert a reasonable expectation of privacy in his account, which warrants dismissal of his invasion of privacy claim.

Accordingly, the Court finds all of Katz's claims are inadequately pleaded in the Amended Complaint.

### C. The Court Grants Katz Leave to Amend His Unjust Enrichment Claims and NJCFA Claim for Unconscionable Commercial Practice

Ambit contends the Amended Complaint should be dismissed with prejudice, because further amendment would be futile. (ECF No. 14-1 at 26.) Ambit explains Katz already had two chances to plead valid claims, the second time with the benefit of the September Opinion, and nonetheless failed to adequately state a claim for relief against Ambit. (*Id.*; ECF No. 16 at 11.) Ambit states Katz fails to offer any explanation of how he would attempt to cure any of the Amended Complaint's deficiencies if provided a third chance to assert his claims. (ECF No. 20 at 6.) Katz counters he should be permitted another opportunity to amend, because the Amended Complaint is only his first amended complaint. (ECF No. 17 at 2–3.) The Court grants Katz an opportunity to amend his unjust enrichment claims and NJCFA claim for unconscionable commercial practice.

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] district court has the discretion to deny this request [for amendment] if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). "[A]n amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citations omitted). A court "will not grant [the plaintiff] leave to amend" when "any future amendment would be futile," even if the plaintiff filed the lawsuit *pro*

*se* and is held "to less stringent standards." *Heine v. Dir. of Codes & Stds.*, Civ. A. No. 15-8210, 2017 U.S. Dist. LEXIS 146411, at *32 (D.N.J. Sept. 11, 2017) (citations omitted). Here, except for futility, the Court discerns no ground that may justify denying Katz's request for amendment.

### 1. Katz May Amend His Unfair Enrichment Claims

In the September Opinion, the Court found "Katz . . . failed to state a claim for unjust enrichment," because his "bare-bones allegations simply list[ed] the elements of an unjust enrichment claim." (ECF No. 10 at 5–6.) Here, the unfair enrichment claims in the Amended Complaint are dismissed because Katz fails to allege an expected remuneration from and a direct relationship with Ambit, which were not discussed in the September Opinion. *See* Part III.B.1, *supra*. "Because the Court is mindful of [Katz's] *pro se* status (and mindful that he did not have the benefit of the above analysis at the time" he requested an amendment, the Court will grant Katz an opportunity to amend his unjust enrichment claims "and permit [Katz] to file a Second Amended Complaint." *Smith v. Trusted Universal Stds. in Elec. Transactions, Inc.*, Civ. A. No. 09-4567, 2010 U.S. Dist. LEXIS 43360, at *42 (D.N.J. May 4, 2010).

Though Katz's denial of any direct dealing with Ambit makes his unjust enrichment claims untenable, *see* Part III.B.1, *supra*, Katz is "permitted . . . to amend complaint to assert a contradictory factual position in response to a Rule 12(b)(6) motion," and the Court may "hold[] that earlier allegation was no longer a binding judicial admission in light of that amendment." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 734–36 (7th Cir. 2002)). Accordingly, the Court grants Katz an opportunity to amend his unjust enrichment claims.

### 2. Katz May Amend His NJCFA Claim for Unconscionable Commercial Practice, But Not His Fraud Claims on Other Grounds

In the September Opinion, the Court dismissed Katz's fraud claims because his allegations

in the original Complaint were "devoid of facts sufficient to meet:" (1) all the elements of the NJCFA and the common law fraud causes of action; and (2) "the heightened pleading requirements of Rule 9(b)." (ECF No. 10 at 6–8.) Katz fails to cure such deficiencies in the Amended Complaint. *See* Part III.B.2, *supra*. Because the fraud claims in the Amended Complaint, except for the NJCFA claim for unconscionable commercial practice, "suffer from the same deficiencies noted earlier by this Court," an "amendment would be futile." *Catlett v. N.J. State Police*, Civ. A. No. 12-153, 2013 U.S. Dist. LEXIS 107820, at *14 (D.N.J. July 31, 2013); *see also TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, Civ. A. No. 12-3355, 2014 U.S. Dist. LEXIS 107756, at *25 (D.N.J. Aug. 5, 2014) ("[T]he [c]ourt has already afforded [the plaintiff] the opportunity to amend its [complaint], yet the [a]mended [complaint] suffer[s] from many of the same pleading deficiencies previously identified by the [c]ourt in the [earlier] [o]pinion. Accordingly, the [c]ourt declines to allow [the plaintiff] to amend a second time.").

In contrast, Katz's NJCFA claim for unconscionable commercial practice should be treated differently, because it is dismissed for a reason not discussed in the September Opinion, *i.e.*, failing to allege Ambit's conduct was misleading. *See* Part III.B.2.b, *supra*. "Because the Court is mindful of [Katz's] *pro se* status (and mindful that he did not have the benefit of the above analysis at the time" he requested an amendment, the Court will grant Katz an opportunity to amend his NJCFA claim for unconscionable commercial practice "and permit [Katz] to file a Second Amended Complaint." *Smith*, 2010 U.S. Dist. LEXIS 43360, at *42. If Katz chooses to do so, he must allege facts showing Ambit performed unconscionable commercial practice in a misleading fashion.

Accordingly, the Court grants Katz an opportunity to amend his NJCFA claim for unconscionable commercial practice, but not his fraud claims on other grounds.

### 3. Katz May Not Amend His Invasion of Privacy Claim

As a matter of law, Katz cannot base his invasion of privacy claim on Ambit's alleged access to his utility records in the gas account. *See* Part III.B.3, *supra*. Therefore, an amendment of the claim would be futile. *Berroa v. United States*, Civ. A. No. 13-4789, 2018 U.S. Dist. LEXIS 109038, at *3 (D.N.J. June 29, 2018) (citing *Ryan v. Collucio*, 183 F.R.D. 420, 423 (D.N.J. 1998)) ("If the causes of action in the proposed amended complaint fail as a matter of law, leave to amend should be denied as futile.").

Even if a person's gas account may contain sensitive personal information, Katz has not alleged such facts for his account, so as to show a reasonable expectation of privacy and the highly offensive nature of an invasion of such privacy. Katz should have done so in the Amended Complaint, because: (1) the account has been in Katz's control, and any sensitive personal information therein should be accessible to Katz; and (2) Katz has the benefit of the September Opinion which laid out the basic elements of an invasion of privacy claim, and suggested that conclusory allegations without relevant factual basis for these elements were insufficient for pleading the claim. (ECF No. 10 at 9.) Unlike the unjust enrichment claims and the NJCFA claim for unconscionable commercial practice, the invasion of privacy claim is dismissed not because Katz fails to meet a pleading requirement not discussed in the September Opinion. Instead, Katz was informed of the factual insufficiency of his invasion of privacy allegations, which he fails to cure in the Amended Complaint. As a result, the Court finds a second amendment of the claim would be futile.

Therefore, the Court dismisses without prejudice and grants Katz leave to amend his unjust enrichment claims and NJCFA claim for unconscionable commercial practice. Katz may not amend the remaining portions of the Amended Complaint. Katz has 30 days file a Second Amended Complaint.

**IV.     CONCLUSION**

For the reasons set forth above, Ambit's Motion to Dismiss is **GRANTED**. Katz's unjust enrichment claims (Counts I–IV) and NJCFA claim (Count V), to the extent it is based on an unconscionable commercial practice under the NJCFA, are **DISMISSED WITHOUT PREJUDICE.** The remaining portions of the Amended Complaint are **DISMISSED WITH PREJUDICE**. Katz has 30 days to file a Second Amended Complaint, and failure to do so will turn dismissals without prejudice into dismissals with prejudice. An appropriate order follows.


**Date: June 29, 2021**                                    */s/ Brian R. Martinotti*
                                                                      **HON. BRIAN R. MARTINOTTI**
                                                                      **UNITED STATES DISTRICT JUDGE**