**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARCEL KATZ**, <br><br> Plaintiff, <br><br> v. <br><br> **AMBIT NORTHEAST, LLC**, <br><br> Defendant. | Civil Action No. 3:20-cv-01289 (ZNQ) (DEA) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Ambit Northeast, LLC ("Defendant" or "Ambit") seeking to dismiss *pro se* Plaintiff Marcel Katz's ("Plaintiff" or "Katz") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28.) Plaintiff opposed the Motion. (ECF No. 31.) Defendant filed replied in support of its Motion. (ECF Nos. 29, 32.)

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND AND PROCEDURAL HISTORY**

  For the purposes of this Motion to Dismiss, the Court "accept[s] as true all factual allegations in the [Second Amended Complaint] and draw[s] all inferences from the facts alleged in the light most favorable to [Plaintiff]" . *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Furthermore,

1

the Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The factual background of this dispute is explained in this Court's Opinions dated September 16, 2020 (the "September 2020 Opinion") (ECF No. 10) and June 29, 2021 (the "June 2021 Opinion") (together, the "Opinions") (ECF No. 21), both of which the Court incorporates by reference. The relevant procedural history is summarized as follows.

In an Order (ECF No. 22) accompanying the June 2021 Opinion, the Court dismissed Plaintiff's Amended Complaint (ECF No. 12) pursuant to a motion to dismiss filed by Defendant (ECF No. 14.) Plaintiff was granted leave to amend his claims only for unjust enrichment and consumer fraud based on unconscionable commercial practice under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8–1 *et seq.* (2005) ("NJCFA"). On July 26, 2021, Plaintiff filed a Second Amended Complaint, reasserting claims for "unlawful enrichment" (Counts I–IV)[1] and consumer fraud under the NJCFA (Counts V–VI). (ECF No. 23, Second Amended Complaint ("SAC").) The instant motion ensued.

## II.   **LEGAL STANDARD**

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct.

---

[1] As pointed out in both the September 2020 Opinion and the June 2021 Opinion, because "unlawful enrichment" is not a valid cause of action under New Jersey law, the Court will analyze Plaintiff's Counts I–IV under the "unjust enrichment" jurisprudence. (ECF No. 10 at 5 n.2; ECF No. 21 at 2 n.2.) Plaintiff has not raised any arguments opposing such a treatment adopted by the Court in the Opinions.

2932, 92 L.Ed.2d 209 (1986)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932 (citations omitted).  Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged."  *Id.*  This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement."  *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).  "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action.  *Id.* (citing *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679, 129 S.Ct. 1937.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v.*

3

*Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286, 106 S.Ct. 2932 (citations omitted).

While generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are integral to or explicitly relied upon in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

## III.   DISCUSSION[2]

### A.  UNJUST ENRICHMENT

Previously, this Court rejected Plaintiff's unjust enrichment claims on the grounds that Plaintiff failed to plausibly allege that (1) Plaintiff expected remuneration from Defendant when he conferred the payment-benefit on Ambit and (2) there was any direct relationship between the parties. (ECF No. 21 at 10–11.)

In the Second Amended Complaint, Plaintiff generally reasserts his unjust enrichment allegations from the Amended Complaint against Defendant. He now asserts that a "clear direct and unjust relationship between defendant and plaintiff" was established when Defendant "unlawfully put the plaintiff down as their client" without his "acceptance and knowledge". (SAC, Counts I–IV ¶¶ 2, 4, 8.) Plaintiff further alleges that he was not aware of this relationship until 2016, when Plaintiff was informed by New Jersey Natural Gas ("NJNG") about the relationship in which Plaintiff's payments were being collected for and being paid to Defendant. (*Id.* ¶ 9.) Sometime thereafter, Plaintiff alleges that he reached out to Defendant to "ask for a refund and

---

[2] The Court incorporates its discussion from its June 2021 Opinion here by reference. (ECF No. 21.)

renumeration [sic] for the monies received by the defendant through the payments plaintiff had made for their charges," which Defendant refused. (*Id.* ¶¶ 10, 12.)

Defendant argues that Plaintiff cannot state a claim for unjust enrichment because: (1) the claim is based on alleged tortious conduct which is not cognizable under New Jersey law; (2) Plaintiff has failed to (and cannot) allege that he expected remuneration from Ambit at the time he made the challenged payments to NJNG; and (3) Plaintiff has failed to allege a direct relationship with Ambit. (ECF No. 28 at 9.)  In opposition, Plaintiff argues that there was a direct relationship as evidenced by Defendant supplying Plaintiff with natural gas.  He also maintains that he sufficiently alleged that he expected remuneration from Defendant in the form of the amount of natural gas he would have received for the same payment at the NJNG price. (ECF No. 31.)

As a preliminary issue, it is well-settled that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action." *Mason v. Coca-Cola Co.*, No. 09-0220, 2010 WL 2674445, at *7 (D.N.J. June 30, 2010) (internal quotations and citations omitted); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *3, (D.N.J. June 6, 2014); *see also Cafaro v. HMC*, No. 07-2793, 2008 WL 4224801, at *12 (D.N.J. Sept. 8, 2008) (finding that the plaintiffs' unjust enrichment claim should be dismissed because the allegations sounded in tort and not in quasi-contract).  However, the Supreme Court of New Jersey has recognized that unjust enrichment can constitute a form of quasi-contractual liability. *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012).  Under New Jersey law, to establish unjust enrichment based on quasi-contractual liability, "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." *Castro v. NYT Television*, 370 N.J.Super. 282, 299 (App. Div. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). "Thus, where a plaintiff asserts an unjust enrichment cause of action along with tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration

from the defendant, the unjust enrichment claim should be dismissed." *Mason*, 2010 WL 2674445, at *7 (internal quotations and citations omitted).

Here, Plaintiff alleges no actual contract underlying his unjust enrichment claims.[3] Accordingly, whether Plaintiff's claims for unjust enrichment survive turns on whether Plaintiff has sufficiently pled the elements for an unjust enrichment claim in quasi-contract. *See Callano v. Oakwood Park Homes Corp.*, 91 N.J.Super. 105, 109 (App. Div. 1966) ("To recover on the theory of quasi-contract the plaintiffs must prove that defendant was enriched, [] received a benefit, and that retention of the benefit without payment therefore would be unjust.")

In its June 2021 Opinion, this Court found that Plaintiff had sufficiently alleged both the benefit that Defendant received (*i.e.*, the increased payment for natural gas charged from his account), as reflected in the NJNG bill attached to the Complaint, and the reason why this alleged benefit was unjustified (*i.e.*, it was charged at a rate without his consent). (ECF No. 22 at 10.) As Plaintiff generally reasserts his unjust enrichment allegations from the Amended Complaint, the Court now considers whether the Second Amended Complaint sufficiently alleges an expectation of remuneration and a direct relationship between the parties.

With respect to remuneration, timing matters because a "plaintiff [must] show that it expected remuneration from the defendant *at the time it performed or conferred a benefit* on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp.*, 641 A.2d at 554 (emphasis added). As alleged in the Amended Complaint, here Plaintiff denies having noticed any relationship with Defendant during the relevant time period, which suggests Plaintiff could not have expected remuneration from Defendant when he paid for

---

[3] Previously, in its June 2021 Opinion, the Court did not address the issue of whether Plaintiff's unjust enrichment claims improperly sounded in tort rather than contract. Then, the Court declined to decide whether a valid contract existed between Plaintiff and Defendant such that Plaintiff's claims for unjust enrichment were barred by such a contract at the motion to dismiss stage. (ECF No. 21 at 9–10.)

the natural gas. (ECF No. 22, at 10.) Indeed, Plaintiff asserts that he was not aware that the benefits were even being conferred upon Defendant until approximately 2016, when he was informed by NJNG that "payments being made by the plaintiff were payments being collected for and being paid by the plaintiff to the defendant AMBIT." (SAC, Counts I–IV ¶ 9.) Plaintiff's newly asserted allegation that he reached out to Defendant to request a refund for prior payments fails to address the temporal requirement, *i.e.,* that he expected remuneration *at the time the benefit was conferred*. (*See id.* ¶ 10.) The alleged request for refund occurred at an unspecified date after learning of the improper payments, and therefore, only occurred after the payments were made. Thus, even assuming the facts alleged in the Second Amended Complaint are true, Plaintiff could not have anticipated, or even expected, remuneration for Defendant's alleged increased natural gas charges at the time the payments were being made.

Second, the Court also finds that Plaintiff has failed to allege a sufficiently direct relationship with Defendant.[4] "A claim of unjust enrichment also requires that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009); *see also Bedi*, 2016 WL 324950, at *5 ("[T]here must be a direct relationship to assert an unjust enrichment claim."). As with his previous Complaint, Plaintiff alleges he paid the natural gas fees directly to NJNG, not Ambit. This is further evidenced by the NJNG bills attached to the Second Amended Complaint which demonstrate that the charges were billed by NJNG, not Defendant, and payments were made to NJNG, not Defendant. (SAC, Exs. A–D.) Plaintiff does not allege any course of dealings (*e.g.*, correspondence or agreement) with Defendant during the relevant time period, except for a request for refund sometime during or after 2016. *See, e.g., Stewart*, 877 F. Supp. 2d at 200 (noting that

---

[4] "Direct relationship" refers to the contract nature of the unjust enrichment cause of action, as distinct from a tort-based unjust enrichment action, which is generally not permitted in New Jersey. *Bedi v. BMW of N. Am., LLC*, No. 15-1898, 2016 WL 324950, at *5 n.2 (D.N.J. Jan. 27, 2016).

the need for "some direct relationship" is to "prevent a finding of liability in cases where the defendant had absolutely no course of dealings with, and no other demonstrated connection to, the plaintiff.")  Furthermore, Plaintiff's newly asserted allegation that a direct relationship was established when Defendant "unlawfully put the plaintiff down as their client" does not negate the fact that the charges were both billed by and paid through NJNG. (SAC, Counts I–IV ¶¶ 2, 8.) *See Cooper v. Samsung Elec. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) ("[A]lthough [plaintiff] alleges that Samsung was unjustly enriched through the purchase of the television, there was no relationship conferring any direct benefit on Samsung through [plaintiff's] purchase, as the purchase was through a retailer.")

Therefore, the Court finds that the Second Amended Complaint fails to cure the deficiencies previously identified by the Court in the June 2021 Opinion such that Plaintiff has not stated a viable claim for unjust enrichment. Under the circumstances the Court concludes that further amendments would be futile, and Plaintiff's unjust enrichment claims are dismissed with prejudice.

    **B.    CONSUMER FRAUD UNDER NJFCA**

The NJCFA prohibits a number of "unlawful practice[s]," namely:

> the act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . .

N.J. Stat. Ann. § 56:8-2.[5] "A claim pursuant to the NJCFA requires three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and

---

[5] After the Second Amended Complaint was filed, the NJCFA's prohibited commercial practices were expanded to include commercial practices that are "unconscionable or abusive", pursuant to an amendment in August 2022. The revised statutory language is not dispositive for the purposes of this motion.

8

the loss." *Jubelt v. United Mortg. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227, at *5 (D.N.J. June 30, 2015) (citing *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1115 (App. Div. 2005)).  Because the NJCFA's history is "one of constant expansion of consumer protection", "it should be construed liberally in favor of consumers." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 915 (3d Cir. 2018) (internal quotations and citations omitted).

In its June 2021 Opinion, the Court held that Plaintiff's NJCFA claim, to the extent it was based on unconscionable commercial practice, failed to allege that Defendant's conduct was misleading.  (ECF No. 22 at 17.)  In granting leave to amend Plaintiff's claim for unconscionable business practices under the NJCFA, but not his fraud claims on other grounds, the Court required that Plaintiff sufficiently allege Defendant performed an unconscionable commercial practice in a misleading fashion.  (*Id.* at 22.)

The Second Amended Complaint alleges that when Plaintiff contacted NJNG in 2016, NJNG informed him that Defendant had communicated with NJNG years earlier and "put themselves down as plaintiff's supplier."  (SAC, Count V ¶ 3.)  This, Plaintiff asserts, was a misrepresentation by Defendant to NJNG that "Plaintiff had consented and agreed to have the defendant as their supplier" even though Defendant did not have any signed contract with Plaintiff reflecting this agreement.  (*Id.* ¶¶ 4–5.)  Plaintiff alleges that Defendant continuously misled Plaintiff for years as to the identity of his supplier because Defendant failed to notify or otherwise inform him that it had listed itself as his natural gas supplier. (SAC, Count VI ¶¶ 2–8.) Defendant's failure to notify Plaintiff that it had listed Plaintiff as its customer therefore caused NJNG to bill

9

Plaintiff at a higher price on Defendant's behalf without Plaintiff's consent, and thus, constituted a misleading unconscionable business practice. (*Id.* ¶ 8.)[6]

Echoing the Court decision on the previous motion to dismiss, Defendant argues that Plaintiff's NJCFA claim should be dismissed for failing to adequately allege that it engaged in an unconscionable commercial practice that was misleading. (ECF No. 28 at 17–18.) On the other hand, Plaintiff argues that the unconscionable commercial practice alleged in the Second Amended Complaint is an affirmative act: Defendant listed Plaintiff as its customer without his consent. (ECF No. 31.) Plaintiff then contends that Defendant intentionally misled him by failing to disclose the unapproved change in his natural gas supplier.

The Court sets aside the parties' dispute as to the unconscionability of Defendant's alleged act because it finds that Plaintiff's NJCFA claim is plausibly pled on another basis.

"There are three general categories of unlawful practices under the NJCFA: (1) affirmative acts, (2) knowing omissions, and (3) regulation violations." *Bianchi v. Lazy Days R.V. Ctr., Inc.*, No. 06-1979, 2007 WL 1959268, at *4 (D.N.J. July 5, 2007) (citations omitted). The Second Amended Complaint alleges Defendant listed itself as Plaintiff's natural gas supplier without his consent. (SAC, Count V ¶ 2.) This practice, known as "slamming," is expressly prohibited under another New Jersey statute: the Electric Discount and Energy Competition Act, N.J. Stat. Ann. 48:3–49 *et seq.* ("EDECA"). *See* N.J. Stat. Ann. § 48:3–86(b)(1) ("[A] gas supplier . . . shall not cause an unauthorized change in a customer's electric power supplier or gas supplier, a practice known as 'slamming.' A change in a customer's electric power supplier or gas supplier shall be deemed to be unauthorized unless the customer has done so affirmatively and voluntarily and the electric

---

[6] Because the Court only granted Plaintiff leave to amend his NJCFA claims to the extent they were based on unconscionable commercial practice, the Court construes Counts V and VI of the Second Amended Complaint for Consumer Fraud as NJCFA claims based on unconscionable commercial practice, in accordance with the June 2021 Opinion and accompanying Order.

10

power supplier or gas supplier has obtained the customer's approval, which approval shall be evidenced by the customer's written signature or electronic signature.")

Drawing all inferences in Plaintiff's favor and under the liberal interpretations applied to *pro se* complaints, the Court finds that the Second Amended Complaint plausibly alleges that Defendant violated EDECA by identifying him as a customer without his consent. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999) (stating that courts have an obligation to construe *pro se* pleadings liberally and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name"); (SAC, Count V ¶¶ 2, 4, 5.) The Court finds that this violation of EDECA, as well as its related regulations, meets the "unlawful practice" element of the NJCFA. *See Bianchi*, 2007 WL 1959268, at *4; N.J. Stat. Ann. § 48:3–86; N.J. Admin Code § 14:4–2.3 (requiring that change orders switching customer subscriptions demonstrate "that the customer has authorized the switch affirmatively and voluntarily.") Accordingly, the Court finds that Plaintiff has pled a plausible NJCFA claim. The portion of the Motion seeking to dismiss that claim will therefore be denied.

IV. **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. Plaintiff's unjust enrichment claim will be DISMISSED WITH PREJUDICE, but his NCFA claims will proceed. An appropriate Order will follow.

Date: **March 20, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
